JUDGE McMAHON

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 12 CIV 4415

-----------------------------------------------------------------

**ANGELA EMERSON**

                            **PLAINTIFF,**

        **v.**

**TIMOTHY F. GEITHNER,**
**SECRETARY OF THE TREASURY,**

                         **DEFENDANT.**

-----------------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:

Civil Action No.

**COMPLAINT**

Plaintiff Demands
a Jury Trial

JUN 5 2012

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff ANGELA EMERSON ("Ms. Emerson" or "plaintiff"), by her attorneys, LEVINE & BLIT, PLLC, complaining of defendant TIMOTHY F. GEITHNER, SECRETARY OF THE TREASURY, (the "agency" or "defendant") respectfully alleges upon information and belief:

## NATURE OF THE ACTION

1.    This action is brought to remedy unlawful discrimination based on race, unlawful retaliation based on race, and hostile work environment based on race contrary to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, Executive Law § 296 *et seq.* ("Executive Law"), and the New York City Human Rights Law, Administrative Code § 8-107 *et seq.* ("Administrative Code"), as well as any other causes of action that may be inferred from the facts set forth herein.

2.    Defendants' actions were unlawful and plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, attorneys' fees, other appropriate legal and equitable relief pursuant to the laws of the State of New York, and such other and further relief as the Court deems necessary and proper.

1

JURISDICTION AND VENUE

3.    Jurisdiction of this Court is proper under 28 U.S.C. §1346.

4.    Venue of this action in the Southern District of New York is proper under 28 U.S.C. §
1391.

PARTIES

5.    Ms. Emerson is a fifty-five (55) year old African-American female, and is a resident of
New Jersey.

6.    Defendant Timothy F. Geithner is the Secretary of the Treasury of the Internal Revenue
Service (the "agency").

7.    At all times relevant to this action, defendant is the "employer" of Plaintiff within the
meaning of the federal and local laws.

8.    At all times relevant to this action, plaintiff is an "employee" of defendant within the
meaning of the federal and local laws and therefore entitled to protection.


FACTUAL ALLEGATIONS

9.    Ms. Emerson is an African-American female.

10.    Ms. Emerson began her employment tenure with the agency in or around 1993 as a Grade
11 Revenue Officer.

11.    Upon information and belief, the agency's upper management consisted of predominantly
Caucasian men, including Ms. Emerson's territory manager Mr. Martin Wolfson ("Mr.
Wolfson").

12.    Upon information and belief, as the agency's territory manager of Northern New Jersey,

Mr. Wolfson was the sole decision-maker regarding promotions to management. In this capacity, Mr. Wolfson denied promotional opportunities to African-American employees, including Ms. Emerson.

13.     In response to this discriminatory treatment, Ms. Emerson made a formal complaint of racial discrimination with the agency's union in 2001. However, Bill Carney, the union representative, is a close friend with Mr. Wolfson and thus was very partial in his determination that Ms. Emerson's charges baseless.

14.     Yet, even Mr. Wolfson admitted that there was a large discrepancy based on the ratio of Caucasian managers to African American managers. Mr. Wolfson in turn promoted Ms. Emerson to a position in Patterson, New Jersey, a separate territory from the one Mr. Wolfson managed.

15.     In her promoted position in Patterson, New Jersey, Ms. Emerson worked under Group Manager Wayne Byer where she continuously received excellent appraisals with CJE scores of 4.0.

16.     In or around 2005, Mr. Wolfson was transferred to the Patterson location and again supervised Ms. Emerson as Territory Manager

17.     On or around September 29, 2005, Ms. Emerson received a Morning After Review from Doug Fuller, a manager of a separate group in the agency, oddly requesting that Ms. Emerson account for her time for the period February 16 through February 22, 2005.

18.     Upon information and belief, this request was directed by Mr. Wolfson as a means to harass and to intimidate Ms. Emerson, as another act of discrimination, and as retaliation for previously lodging a formal complaint of racial discrimination against him. Doug Fuller was at no time Ms. Emerson's Group Manager and upon information and belief, no other Revenue

3

Officer was subjected to this type of review.

19.     In or around October 1, 2005 through December 31, 2007, Mr. Steven Fonder ("Mr. Fonder") served as Ms. Emerson's Group Manager under the Territory Management of Mr. Wolfson.  In this capacity, Mr. Fonder and Mr. Wolfson issued performance appraisals of Ms. Emerson for her 2006 appraisal and her 2007 appraisal.

20.     Under the direction of Mr. Wolfson and as a further act of retaliation and discrimination, Ms. Emerson's appraisal scores were much lower than the consistent CJE 4.0 scores she attained under previous management, despite her continuously good work performance.

21.     Ms. Emerson was issued a lower than justified rating in her annual appraisal for 2006, which contained inaccurate, negative and undocumented information.   This unwarranted negative review was done at Mr. Wolfson's command.  In fact, Mr. Fonder even verbally warned Ms. Emerson about Mr. Wolfson's role in giving Ms. Emerson a lower than usual appraisal review.  Furthermore, it was widely known amongst the other employees in the territory that Mr. Wolfson had targeted several minority women in this same regard.

22.     In or around January 2008, Mr. Henry J. Bedlivy ("Mr. Bedlivy") replaced Mr. Fonder as Ms. Emerson's Group Manager and immediate supervisor, again under the territory management of Mr. Wolfson.

23.     In or around March 2008, Mr. Bedlivy presented Ms. Emerson with her 2007 appraisal. The 2007 appraisal contained two (2) errors: a "not met" retention standard rating and an overall "unacceptable" rating.

24.     To correct the erroneous 2007 appraisal, Mr. Bedlivy issued corrected 2007 appraisals to Ms. Emerson.   Yet, in each version of the 2007 appraisal, Ms. Emerson's was given the same overall rating of "minimally successful" and the same average CJE score of 3.4.  These negative

4

performance appraisals were purposefully designed to target Ms. Emerson for dismissal from the agency. In fact, Mr. Bedlivy told Ms. Emerson that he was "just the messenger," indicating that Mr. Wolfson was responsible for her unjust and inaccurately low scores.

25.     Due to stress from the hostile work environment and the pervasive racial discrimination and harassment, Ms. Emerson became very ill and was forced to take sick leave from January 7, 2008 through February 22, 2008. She returned to duty on or around February 25, 2008.

26.     Upon information and belief, while Ms. Emerson was on sick leave, the agency failed to reassign her cases during her absence and even assigned her additional cases, violating territory policy. It was the agency's practice to reassign cases for employees with extended absences of 30 days or more without requiring submission of such a request. Such a reassignment of cases had been the practice for similarly-situated Caucasian employees. However, the agency failed to afford Ms. Emerson the same courtesy citing that she never asked for such a request, and thereby created an unmanageable workload for her upon her return from sick leave.

27.     As managers, Mr. Bedlivy and Mr. Wolfson are responsible for ensuring that workloads are managed effectively. Their actions and the agency's failure to provide Ms. Emerson with the same accommodations as those given to Caucasian employees constitutes discrimination based upon Ms. Emerson's race and created a hostile environment for her.

28.     On March 11, 2008, Ms. Emerson filed a grievance challenging the overall rating of "minimally successful" and the CJE score of 3.4 on her 2007 appraisal.

29.     In or around July 2008, while Ms. Emerson prepared for her grievance and reviewed her Employee Personnel File, she noticed that her file, which was suspiciously in Mr. Wolfson's possession, had been tampered with. Several of the taxpayer letters complimenting Ms. Emerson's job performance had been mysteriously removed. Moreover, a fraudulent memo had

5

been inserted into Ms. Emerson's file stating that she "refused to sign" a negative case review, when at no point had Ms. Emerson refused to sign any document.

30.     The expungement of several positive reviews and the addition of a fraudulent memo in Ms. Emerson's file were additional acts of retaliation, discrimination and further contributed to the already hostile environment in which Ms. Emerson worked.

31.     In response to this pattern of discrimination, harassment and hostile work environment, Ms. Emerson filed a grievance with the agency's Equal Employment Opportunity Treasury Complaint Center in or around July 3, 2008.

32.     However, in conducting its investigation, the agency refused to interview a number of employees who Ms. Emerson cited as witnesses to the racial discrimination, harassment, retaliation and hostile work environment that Ms. Emerson endured.

33.     On August 5, 2009, Ms. Emerson contacted the Treasury Complaint Mega-Center and again requested that the agency interview her witnesses.  She also questioned why the co-workers that actually were interviewed for the investigation were not even asked about several of the issues raised in Ms. Emerson's complaint.

34.     On August 18, 2009, the agency denied Ms. Emerson's request to conduct more interviews of her witnesses and refused to question the witnesses they did interview about several of Ms. Emerson's allegations of discrimination, harassment and hostile work environment.  The agency groundlessly concluded that "it did not appear as though [the witnesses] would have relevant information related to each issue," however it reassured Ms. Emerson that she could seek additional testimony from these individuals if she requested a hearing with an Administrative Judge at EEOC.

35.     Ms. Emerson requested a hearing with an Administrative Judge at the EEOC, but on

6

March 7, 2012, the EEOC denied Ms. Emerson a hearing. It determined that her complaint was appropriate for a decision without holding a hearing. This denial deprived Ms. Emerson of the opportunity to elicit essential testimony to support her position from witnesses that the agency failed to interview in the investigation and from witnesses that the agency interviewed but did not question about several issues germane to Ms. Emerson's complaint.

36.     Consequently, the EEOC made a finding of no discrimination with regard to Ms. Emerson's complaint.

### FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS
**(Unlawful Discrimination and Harassment based upon Race contrary to Title VII)**

37.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 36, as if set forth fully herein.

38.     Plaintiff is a member of a protected class as defined by Title VII, which protects against discrimination and harassment based upon race.

39.     At all times relevant to the complaint, plaintiff is an "employee" and defendant is an "employer" within the meaning of the federal laws.

40.     Plaintiff was harassed and discriminated against based upon her race in violation of Title VII, which prohibits harassment and discrimination in the terms and conditions of employment.

41.     As a result of the foregoing, plaintiff has suffered and will continue to suffer substantial losses, including loss of promotional opportunities, past and future earnings, bonuses, deferred compensation, and other employment benefits.

42.     As a result of the foregoing, plaintiff has also suffered and will continue to suffer monetary and compensatory damages for mental anguish, emotional distress, and other incidental and consequential damages and expenses.

58.    Plaintiff engaged in a protected activity when she formally complained to the agency about the racial discrimination she endured in the denial of several promotional opportunities due to her race.

59.    As a direct result of making this formal complaint concerning Mr. Wolfson's discriminatory practice in awarding promotions, Plaintiff was retaliated against by Mr. Wolfson and the agency who subjected her to several acts of harassment in violation of the Executive Law.

60.    Pursuant to the acts and practices of defendant as alleged above, Plaintiff has been subjected to unlawful retaliation for engaging in a protected activity.

61.    As a proximate result of defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

62     As a further proximate result of defendant's unlawful acts and practices as alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages for mental anguish, emotional distress, and other incidental and consequential damages and expenses.

63.    Defendant acted outrageously with malice and reckless indifference to the plaintiff's protected civil rights under the Executive Law and plaintiff is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS
### (Unlawful Retaliation based upon Race contrary to the Administrative Code)

64.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 63, as if set forth fully herein.

10

65.     Plaintiff engaged in a protected activity when she formally complained to the agency about the racial discrimination she endured in the denial of several promotional opportunities due to her race.

66.     As a direct result of making this formal complaint concerning Mr. Wolfson's discriminatory practice in awarding promotions, Plaintiff was retaliated against by Mr. Wolfson and the agency who subjected her to several acts of harassment in violation of the Administrative Code.

67.     Pursuant to the acts and practices of defendant as alleged above, Plaintiff has been subjected to unlawful retaliation for engaging in a protected activity.

68.     As a proximate result of defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

69.     As a further proximate result of defendant's unlawful acts and practices as alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages for mental anguish, emotional distress, and other incidental and consequential damages and expenses.

70.     Defendant acted outrageously with malice and reckless indifference to the plaintiff's protected civil rights under the Executive Law and plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION AGAINST THE DEFENDANTS
### (Hostile Work Environment based upon Race contrary to the Executive Law)

71.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 70, as if set forth fully herein.

72.     During plaintiff's employment with defendant, she was subjected to continuous and pervasive discrimination and harassment based upon her race that went uncorrected by defendant. This discrimination altered the terms and conditions of her employment and created an abusive work environment.

73.     Plaintiff was denied several promotional opportunities due to her race. After making a protected complaint regarding this racial discrimination, plaintiff was then targeted and subjected to numerous acts of harassment exacerbating the already hostile work environment.

74.     Pursuant to the acts and practices of defendant as alleged above, plaintiff has been subjected to a hostile and abusive work environment that have altered the conditions of her employment with the agency.

75.     Defendant's discriminatory treatment of plaintiff on the basis of her race is in violation of the Executive Law.

76.     As a proximate result of defendant's alleged conduct, plaintiff has been denied promotional opportunities and related increased compensation, benefits, and bonuses; and has suffered mental anguish, emotional distress, and loss of enjoyment of life, and has incurred damages thereby.

### SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS
### (Hostile Work Environment based upon Race contrary to the Administrative Code)

77.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 76, as if set forth fully herein.

78.     During plaintiff's employment with defendant, she was subjected to continuous and pervasive discrimination and harassment based upon her race that went uncorrected by

defendant. This discrimination altered the terms and conditions of her employment and created an abusive work environment.

79.     Plaintiff was denied several promotional opportunities due to her race.  After making a protected complaint regarding this racial discrimination, plaintiff was then targeted and subjected to numerous acts of harassment exacerbating the already hostile work environment.

80.     Pursuant to the acts and practices of defendant as alleged above, plaintiff has been subjected to a hostile and abusive work environment that have altered the conditions of her employment with the agency.

81.     Defendant's discriminatory treatment of plaintiff on the basis of her race is in violation of the Administrative Code.

82.     As a proximate result of defendant's alleged conduct, plaintiff has been denied promotional opportunities and related increased compensation, benefits, and bonuses; and has suffered mental anguish, emotional distress, and loss of enjoyment of life, and has incurred damages thereby.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court enter an award:

a)     An order prohibiting defendant from continuing the policy, practices, or custom of denying promotional opportunities to employees on the basis of race;

b)     An order enjoining defendant to promote plaintiff to a Grade 12 Revenue Officer;

c)     An award to plaintiff of her actual damages in an amount to be determined at trial for the loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

d)     An award to plaintiff of compensatory damages in an amount to be determined at trial for the humiliation, mental anguish, and emotional distress sustained by her;

e)     An award of punitive damages;

(f)     The costs of her reasonable attorney's fees and costs of the action, plus interest, to the fullest extent permitted by law; and

(g)     Such other and further relief that this Court deems just and proper.

Dated:  New York, New York
        June___, 2012

                                        Respectfully, Submitted,

                                        **LEVINE & BLIT, P.L.L.C.**


                                        By: Matthew J. Blit, ESQ.

                                        *Attorneys for Plaintiff, Angela Emerson*
                                        Empire State Building
                                        350 Fifth Avenue, Suite 3601
                                        New York, NY 10118
                                        Phone: (212) 967-3000
                                        Fax:    (212) 967-3010

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Civil Action No.

-----------------------------------------------------------------

ANGELA EMERSON,

Plaintiff,

-against-

TIMOTHY F. GEITHNER, SECRETARY, DEPARTMENT OF THE TREASURY,

Defendant.

-----------------------------------------------------------------

**SUMMONS AND COMPLAINT**

-----------------------------------------------------------------

**LEVINE & BLIT, PLLC**
Empire State Building
350 Fifth Avenue - Suite 3601
New York, New York 10118
(212) 967-3000